IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PAUL D. TIMMS, Institutional ID No. 1564883, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:20-CV-067-M-BQ |
| CHRISTIAN DOUTHIT, M.D., | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND
<u>RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE</u>**

Proceeding pro se and *in forma pauperis*, Plaintiff Paul D. Timms filed this action under 42 U.S.C. § 1983, claiming violations of his constitutional rights during his incarceration in the Texas Department of Criminal Justice (TDCJ).[1] ECF No. 1. Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order No. 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. ECF No. 6. The undersigned thereafter reviewed Timms's Complaint, as well as authenticated records from TDCJ, and ordered Timms to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF No. 37. Timms timely completed and returned the questionnaire. ECF No. 38. The undersigned now makes the following findings and conclusions and recommends that the district judge dismiss Timms's Complaint in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

---

[1] The Court initially denied Timms's request to proceed *in forma pauperis*. ECF Nos. 2, 12; 14. Timms appealed the denial, and the Fifth Circuit affirmed. ECF Nos. 15, 23, 24. Following the appeal, this Court allowed Timms the opportunity to file a renewed application. ECF No. 30, 31. This Court subsequently granted the renewed motion to proceed without prepayment of the filing fee. ECF No. 33.

I. **Standard of Review**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing

2

complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Discussion

### A. Timms's Allegations

Timms's Complaint and Questionnaire responses contain assertions that could be liberally construed as alleging a number of different claims against various potential defendants. Timms, however, has specifically named only one Defendant in this action: Christian Douthit, M.D., Texas Tech University Health Sciences Center (TTUHSC) Orthopaedic Specialist. Compl. 1, ECF No. 1.[2] And he does so for the limited purpose of challenging Dr. Douthit's decision to deny knee replacement surgery until Timms reaches age 55. *See, e.g., id.* at 4 (challenging Dr. Douthit's decision to conservatively treat Timms's knee injury "until [he] reach[es] the age of 55 and [is] 'eligible' for knee replacement"); Questionnaire 2, ECF No. 38 ("I understand [I] could have named other defendants in this complaint. I chose not to because it was Dr. Douthit's sole decision to refuse to fix my injury and instead passed the buck elsewhere in an attempt [sic] to minimize treatment for a period of 7 years.").

According to Timms, he injured his right knee and in December 2018, TTUHSC physician Dr. Ferguson ordered an MRI, which "revealed no apparent remaining Anterior Cruciate Ligament (ACL) due to a retearing of previous ACL graft; and that [his] Posterior Cruciate Ligament (PCL) is buckled as a result." Compl. 4, 6. Dr. Ferguson apparently recommended physical therapy and a knee brace as treatment and referred Timms to Dr. Douthit for evaluation. *Id.* at 8; Questionnaire 3. On May 16, 2019, Timms saw Dr. Douthit for follow-up treatment. Compl. 8. Timms asserts

---

[2] Page citations to Timms's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

3

that Dr. Douthit "decided [his] ACL and PCL [c]ould not be repaired" and that his symptoms could instead be controlled "by steroid injections, . . . oral medication . . . , and bracing until [he] reach[es] the age of 55 and [is] 'eligible' for knee replacement." *Id.* at 4 (cleaned up).[3] In the clinic note that Timms attached to his Complaint, Dr. Douthit states Timms's knee is stable on exam and that he does "not suspect revision ACL reconstruction [would] help with his discomfort." *Id.* at 10–11. Further, Dr. Douthit noted that until Timms "is more appropriate age for [knee replacement]," his symptoms should be controlled with oral medications, bracing, and steroid injections. *Id.* at 11.

Timms disagrees. He avers his knee can and should be replaced despite only being forty-nine years old at the time of examination—six years younger than the recommended age for knee replacement surgery—because "under circumstances where ligaments are gone like [his] it is common to make exceptions to the recommended age for replacement." Questionnaire 2. Timms concedes that he has not received further medical care from Dr. Douthit, beyond the initial evaluation, diagnosis, and proposed treatment plan. *Id.* Timms does complain, however, that Dr. Douthit put him under a treatment plan that Douthit "could not insure would be followed," thus causing him further discomfort. *Id.* at 6. Additionally, Timms alleges that he continues to experience severe pain and discomfort, and now has a back injury as a result of his knee buckling that he otherwise would not have had "had Dr. Douthit not intentionally denied or delayed access to sufficient medical care." *Id.* According to Timms, "Dr. Douthit's decision to cause an unwarranted delay in providing a necessary surgery" amounts to deliberate indifference because it

---

[3] Timms does allege that, at times, some medications and/or treatments have been discontinued or refused. However, he attributes none of these actions to the sole Defendant in this case, i.e., Dr. Douthit. *See, e.g.*, Questionnaire 5 (explaining that although Dr. Douthit prescribed Naproxen twice daily, Nurse Practitioner Eastridge only provided this for fifteen days), 2 (alleging he was "denied further access to Dr. Douthit by Nurse Practitioner Eastridge . . . even though Dr. Douthit advised" he should return as needed).

4

"cause[d] an easier and less efficacious treatment to be consciously chosen." *Id.* He seeks injunctive relief, requesting that the Court order Dr. Douthit to perform surgery. Compl. 4; Questionnaire 2.

### B. Timms has failed to state a claim for deliberate indifference to his medical needs.

The Constitution requires that prison officials provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish a constitutional violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991))). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks and citation omitted)) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only where he (1) "knows [the] inmate[] face[s] a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*,

239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Timms has failed to plead sufficient facts to state a viable deliberate indifference claim. He merely takes issue with Dr. Douthit's (an orthopaedic specialist) decision to treat his knee injury with steroid injections, oral medication, and bracing until he reaches the eligibility age for knee replacement surgery. Questionnaire 2, 6. These allegations amount to disagreement with Dr.

6

Douthit's medical judgment and the treatment he provided, rather than a refusal by Dr. Douthit to provide treatment. *See Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007) (per curiam) ("[Prisoner's] dissatisfaction with the treatment he received is insufficient to state a constitutional claim."); *McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. Oct. 29, 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Garrett v. Sulser*, No. 6:17cv310, 2019 WL 8500862, at *7 (E.D. Tex. Nov. 4, 2019) (concluding that complaints alleging medical personnel "merely performed a 'cursory' examination" were nothing more than "disagreement and/or dissatisfaction with the medical treatment he received"), *R. & R. adopted by* 2020 WL 562804 (E.D. Tex. Feb. 5, 2020); *Shipley v. Statton*, No. 1:08–CV–133–C ECF, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with the [care provided] . . . does not demonstrate that he was denied treatment.").

While Timms may have desired immediate knee replacement surgery, his disagreement with Dr. Douthit's medical decision not to perform surgery fails to state a viable constitutional claim. *Gonzalez-Lamas v. McAdams*, No. 5:14–CV–124–C, 2015 WL 3883514, at *4 (N.D. Tex. June 22, 2015) ("[Defendants] determined that surgery was not required," which "is a classic example of a matter of medical judgment." (citation omitted)); *Dickerson v. Murray*, No. 3:11-CV-200, 2014 WL 12526722, at *2 (S.D. Tex. Jan. 15, 2014) ("As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right, even though the prisoner may disagree with the course of treatment.").

At best, a very liberal construction of Timms's allegations might state a claim for negligence, which also fails to implicate the Constitution. *See Gobert*, 463 F.3d at 346; *Casher v. Melton*, No. 1:14–CV–00120–C, 2015 WL 3541476, at *4 (N.D. Tex. June 2, 2015) ("Negligence

or medical malpractice does not amount to a constitutional violation."); *Martikean v. United States*, No. 3:11–CV–1774–M–BH, 2012 WL 1986919, at *5 (N.D. Tex. Apr. 6, 2012) ("A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment."), *R. & R. adopted by* 2012 WL 1992111 (N.D. Tex. June 4, 2012).

Construing Timms's claim against Dr. Douthit as one for a delay in medical care requires no different result. Timms states, and the authenticated records reflect, that he received medical care (e.g., a steroid injection, a knee brace, physical therapy, and several x-rays) following his visit with Dr. Douthit. Compl. 10–11; Questionnaire 3–4. Timms explains that Dr. Douthit's decision to delay surgery was because he "did not suspect revision ACL reconstruction [would] help." Questionnaire 6 (internal quotation marks omitted). As noted above, such assertions do not allege a denial of medical care or surgery due to deliberate indifference on Dr. Douthit's part. *Gonzalez-Lamas*, 2015 WL 3883514, at *4 ("A healthcare provider's decision as to the appropriate course of treatment [, e.g., to delay surgery,] 'is a classic example of a matter of medical judgment.'" (citation omitted)); *see Norton*, 122 F.3d at 292 ("Disagreement with medical treatment does not state a claim for . . . indifference to medical needs."). Absent an initial finding of deliberate indifference, any resulting harm, substantial or otherwise, cannot form a basis for recovery. *See Mendoza*, 989 F.2d at 193 ("[I]n order to maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in [substantial] harm.")

Timms's other assertions reinforce this conclusion. Timms acknowledges that he only saw Dr. Douthit on the one occasion, and he pleads no facts demonstrating that he communicated his alleged continuing pain and subsequent back injury to Dr. Douthit *after* his visit and having received the injections and medication prescriptions. Questionnaire 2. "A defendant cannot be

8

said to be deliberately indifferent to a medical need of which he/she was unaware." *Luke v. Neal*, No. 19-14605, 2020 WL 5646997, at *3 (E.D. La. Sept. 1, 2020) (alteration omitted) (quoting *Marroquin v. Helen*, No. C 12-617, 2012 WL 1748019, at *2 (N.D. Cal. May 16, 2012)). Because Timms has not alleged facts showing that Dr. Douthit was aware his chosen course of treatment was not working and/or resulted in additional injury, Timms cannot show that Dr. Douthit's decision to delay surgery was due to deliberate indifference.

Finally, Timms's remaining allegations of a delay in care are directed at prison medical staff, not Dr. Douthit. Questionnaire 1–2, 5, 7. Timms avers that prison medical staff only provided the prescribed pain medication as directed by Dr. Douthit for fifteen days and was then "left on [his] own to seek out ways to relieve pain." *Id.* at 1, 5. Further, Timms asserts that he was denied another knee injection and access to Dr. Douthit by prison medical staff. *Id.* at 2, 7. Any delay caused by prison medical staff is not attributable to Dr. Douthit and thus, Timms's deliberate indifference claim fails for this additional reason. *Young v. TDCJ*, No. H-18-4050, 2020 WL 825614, at *8 (S.D. Tex. Feb. 19, 2020) (dismissing prisoner's denial of medical care claim, where prisoner did not plead "facts showing that any delay was attributable to [defendant]").

Timms has not stated a claim for deliberate indifference against Dr. Douthit based on his decision not to perform knee surgery. Timms's allegations merely demonstrate that he disagrees with the treatment prescribed by Dr. Douthit. The undersigned therefore concludes that Timms's claims should be dismissed.

### III.  Recommendation

For these reasons, the undersigned recommends that the United States District Judge dismiss Timms's Complaint for failure to state a claim in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

### IV. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 30, 2023.

_____
D. GORDON BRYANT, JR.
**UNITED STATES MAGISTRATE JUDGE**